Good morning. My name is Doug Passon and I, along with my co-counsel Michael Gordon, represent the appellant Ralph Nelson Whistler. I'd like to argue the issues in the brief for 15 minutes and reserve 5 minutes for argument, and Mr. Gordon will be handling the rebuttal in this manner with the Court's permission. The first issue that's before the Court is the question of grand jury presentment. The issue here really touches on an age-old fundamental question in the history of jurisprudence, and that is, is ignorance of the law an excuse? And normally, under almost every circumstance under the law throughout the history of American law, the answer has been no, ignorance of the law is not an excuse. But as we know... Well, the indictment charged willfulness, and willfulness means knowing your duty involuntarily and intelligently and intentionally violating it, so... I would respectfully... Why isn't that a defense and not a problem with the indictment? I would respectfully disagree that with the Court's assessment that willfulness always means the same thing in every context in criminal law. Maybe not in every context, but in the tax context, doesn't it? In tax context, willfulness means something very unique and very special, and therein lies the problem. Willfulness means an intentional violation of a known legal duty. And so this imposes an additional burden on the government to prove that the defendant or the appellant knew he had a duty under the law and that he intentionally violated the duty under the law. Well, isn't that a matter of the proof? We're talking about the indictment, I thought. And in the indictment, the point is that they allege it was willful. Whether or not they could prove it, that comes later. I thought you were talking about the indictment now. We are, Your Honor, and specifically we're talking about the fundamental right under the Fifth Amendment to a grand jury presentment. What we have here, regardless of the proof at trial, regardless of the jury verdict, regardless of the forms of verdict that were submitted to the jury guaranteeing that the jury's verdict was correct, we have to look at whether the indictment was presented because the fundamental right to a grand jury presentment says we can never have a defendant tried on a charge where the grand jury did not pass upon or even risk that they weren't even presented with all of the elements of the offense. It's a fundamental right. And what the law says is this right is so important that when the defendant raises it before trial, it's not harmless error, no need to even show prejudice because this right is so integral to our system. Maybe you can help me. I just have great difficulty seeing how you get beyond the indictment, which makes the proper charge. If the indictment didn't make the proper charge, perhaps you could then say, well, the grand jury obviously messed up because it didn't charge a crime. But here it does. So where's the problem? The issue isn't whether or not the indictment charges a crime. The issue is whether or not the indictment sufficiently alleges the proper mens rea to commit the crime. What is improper about alleging or charging willfulness as you have defined it? Well, the issue is, Your Honor, did the grand jury know the special definition of willfulness? Did the grand jury return an indictment which on its face said willful and you've just defined it? What's wrong with that? What could possibly be wrong with it? Well, Your Honor, in the realm of the law, there are different variations and definitions of willful. For example, there are several cases that say that reckless indifference to the knowledge of the truth or falsity of facts can then be shown to prove a knowing and willful behavior on the part of the defendant. So how do we know as we stand here today that the grand jury didn't hear the facts? Well, who cares? Who cares? Because the indictment charges willful. You have agreed, everybody agrees, that in the tax context it means intentional violation of a known duty. That's what the charge is. And now it's all water over the dam. Well, we know that that's what that means. This Court certainly knows what it means. Yes. The lawyers certainly know what it means. Yes. But the question is, does the grand jury know what it means? Who cares? The Constitution cares, Your Honor. No, the Constitution cares that you're not charged and convicted of something that isn't a crime. Every element of the offense, Your Honor, must be presented to the grand jury and they must pass upon it to determine probable cause. Okay. Wasn't the trial jury, the pettit jury, properly instructed? I believe the pettit jury was properly instructed. And they convicted? Well, they convicted on all but two counts. And interestingly, the two counts they did not convict on were the counts involving Mr. Whistler's own returns. And, of course, the issue in the case was what did Mr. Whistler know about the deductions, the representations? One thing we can be certain about, the government can't appeal those acquittals. So we're left with charges where the jury, the pettit jury, properly instructed, found that your client was guilty, an element of which was willfulness. And doesn't that wipe out any error before the grand jury? Isn't the Supreme Court case law just absolutely clear on that? No, Your Honor. I believe that the ---- Well, tell me how it's not. Because I think that the analysis that the court is using in terms of the prejudice that is caused to the defendant is an analysis that is applied when the defense does not raise this issue before trial. There's a completely different standard of review when the court reviews it after trial. And what the cases say is, okay, we look at the indictment, and if we can fairly assume from the language in the indictment that the grand jury was properly instructed, then we're going to say no prejudice and there's harmless error. But the cases that say when this is raised pre-trial, Dubot, for example, state that prejudice is not an issue. This is a fundamental right that was taken away from the defendant. It seems to me if your proposition were correct, every single criminal case would involve a trial within a trial to try the evidence that was presented to the grand jury to see whether they had sufficient evidence to indict. And that is not the law. That's what you're asking for here. I respectfully disagree. There's a very easy way to tell whether the grand jury was presented with sufficient evidence and passed upon each element of the offense. Whether it's easy to do or not, the point is you don't get that right to have a trial within a trial. First you try the grand jury testimony. Then you try the trial itself. And we're not asking for a trial within a trial, and we weren't asking for that in this case. We were asking for something very simple, and that was the disclosure of the grand jury transcript. Have you practiced in Arizona? Yes, Your Honor. Have you practiced in state court? I have before, yes. Criminal cases? Yes, Your Honor. In the state system in Arizona, you can do what you're asking. If you think you can get access to the transcript almost as of right, you can look at it and you can file a motion with the superior court and say they didn't hear enough, send it back. There is no such right. No such right in the federal system. Well, there is a right to disclosure of the grand jury transcript when the defense can make a showing that there was error at the grand jury. And the error is? And the error was the failure to present the elements and to ensure that the grand jury in fact passed on the proper mental rate. How do we know they failed to do that? Well, Your Honor, in the motion that we made before the trial court, we said look at the indictment. This case involves the specific allegation that the defendant knowingly violated, intentionally violated a known legal duty. Cheek takes this out of the realm of ordinary willfulness, which was alleged in the indictment, ordinary fraudulence, which was alleged in the indictment, which can be proven by lesser mens rea. Cheek raises the bar, and we stated look at the face of the indictment. It's not there. And moreover, the government has never once come forward and said this evidence was in fact presented to the grand jury. So there is what we have here is a giant question mark hanging over this court, the lower court, and what we're doing is guessing about what the grand jury passed upon. Case law makes very clear that we are not to guess because guessing creates a risk, and that risk is the violation of the grand jury presentment under the Fifth Amendment. The next issue, well, we talked about the request for the grand jury transcripts. I'd like to discuss not the next issue but the issue concerning the introduction of what the government refers to as summary charts and evidence in trial by use of their expert witness, not only the use of the expert witness but the fact that these charts were then admitted as substantive evidence and sent back to the jury room to aid and assist in the jurors' deliberations. We submit that it was error on the part of the court to even let this summary witness testify in the first place because it was not proper to say that the purpose of this witness was to simply summarize voluminous testimony or facts and figures. This witness was doing significantly more than summarizing. He was putting a spin on how the jury should view that evidence. Were you provided notice of the government's intention to use a summary testimony? We were. So you knew in advance? Well, we knew in advance the government intended to call a summary witness, and, in fact, we objected to the government. And were the charts shown to you prior to trial? No, they were not. When were they shown? They were shown just prior to the government calling the witness to the stand. Did they ask for a continuous? I'm not sure that we actually asked for a continuous, but we did object to the admission of the charts, not just on the timeliness issue but with the contents of the charts and summaries because they were unbelievably prejudicial and conclusory. There were statements. Did you offer your own expert? Yes, we did, Your Honor. With charts? No. And, of course, our expert was offered for a very different reason than the government offered theirs. Our expert was not to summarize the testimony. It was to provide legal opinions on the issues of trusts and the duties of CPAs and that sort of thing. Did you have the opportunity to cross-examine the government expert? Yes, we did. As to the accuracy of the summaries he presented? Well, Your Honor, yes, we did. We did. And there were really two fronts that existed in the cross-examination. There were challenges to the accuracy of the figures because there was a discrepancy between this witness's figures and prior figures that the government had come up with. One of the big problems we had was the unique nature of this testimony from the government's perspective because what they did is they said they put a witness on the stand who wasn't involved in the investigation of the case, he was sitting in the back of the courtroom for the whole trial, listening to all the evidence and, you know, making his charge. And they were very specific to say everything that he's talking about. Did you invoke the rule? Yes, I believe we did invoke the rule. Was he an exception? I believe so. Was he a case agent? I believe so, Your Honor. But he had every right to be there. I'm not remembering exactly the specifics of that. It's possible that we didn't invoke the rule with regard to him because there was, although I'm not sure, Your Honor, I think I'd have to check. I think that we did, but I'm not 100% certain. What I am certain of is they had, he wasn't the sole case agent involved. They had other people at counsel's table. But, Your Honor, this is a situation where he was, where the government said to the jury, we've got this fellow who's sitting here, heard all the evidence, and now we're going to put him on the stand to tell you what that evidence should be. And he made conclusory statements such as this was assignment of income. These charts referred to assignment of income. These charts were very sarcastic in their form and presentation where they had words that were in quotation marks. For example, the words management were in quotation marks in these charts. And, of course, one of the issues was whether the management fees were proper deductions. And so in putting these words in quotation marks, it was a message to the jury that this witness didn't believe that those were truthful and honest deductions, and that's how the jury should interpret this evidence. So what happened, you get this prejudicial testimony compounded by these unduly prejudicial charts that weren't summaries. They were summaries of the government's closing argument. And then the judge adds insult to injury and admits those as substantive evidence, which we know these charts are not substantive evidence, and sends them back into the jury. So essentially it was like having a prosecutor in the jury room during deliberations. What we have is a case in this court, the Soulard case, that has talked about summary evidence and said the judge should not admit these as substantive evidence. Did the judge accompany these exhibits with instructions to the jury about how they handled them? The judge gave limiting instructions to the jury. Both at the time that they were admitted and later in general instructions? I believe so. But I don't believe that those instructions were sufficient to cure the prejudice in this case. The instruction from the judge basically said you're the trier of fact and the information in the charts is only as good as the evidence that was presented at trial. But I don't think that's sufficient to overcome the weight of having a government witness who was in court through the whole trial and said I sat through this evidence and this is how it should be viewed, and then giving those to the jurors for them to refer to during their closing argument. And this court has repeatedly said you can't do it. You shouldn't do it. It's not proper. That's United States v. Soulard. The other issues we have, of course, are a multitude of sentencing issues. And what we have here is a situation where many of the enhancements were challenged based on sufficiency of the evidence, and then we had the Blakely-Ameline rulings that came down in the meantime. Presumably as to those, we'll have to abide what the Supreme Court does in Fan Fan, right? That's correct, Your Honor. All right. But I would submit in the meantime this Court was correct in holding in Ameline and that the Court should be remanded for resentencing at the very least, but reversed on the whole. Thank you. Okay. Mr. Karam, do you have anything that you feel is necessary to clarify? Then the matter just argued will be submitted and the Court will take a brief recess before hearing the last two matters on the calendar. Well, there's not really anything to rebut. I understand that, but there was additional argument that was placed in front of the Court here, and you were entitled to have 20 minutes off of the argument. Yourself. I don't mean to offer the Court disrespect, but I think there's a fundamental misunderstanding of what happened and why we're arguing the grand jury presentment issue. The overall issue presented on the grand jury indictment is this, that a defendant in order to be convicted of a tax scheme has to be shown to have violated a known legal duty. The Chief Court said every taxpayer is entitled to take advantage of loopholes and matters like that, and since the Internal Revenue Code is so complex that they have to show, the government has to plead to the grand jury and prove to the penitent jury willful conduct, that is, conduct that he knew he was violating the law. Take those one at a time. Did they plead? Did they offer a proposed indictment to the grand jury? Can I finish? Yes. Did they offer a proposed indictment to the grand jury that included willfulness? The answer is yes, isn't it? Yes and no. And I'll tell you why. Because when they, when you look at the term willfulness itself, willful. Word in the indictment. The word certainly was in the indictment. And the jury convicted. And the jury convicted. But the United States Supreme Court, as far back as Carl said, that those words have to be clear and have to not have ambiguity. You take a look at this jury, this Court's instruction, for example, under 1001, where the statute, false statement statute, uses the same term, willful, it says the act only need be volitional. The word does not have that kind of clarity that the Supreme Court and this Court has required in the past. The fact that the indictment itself used the word false or used the word specifically knowledge. We know that the words were alleged in the indictment, but we don't know how it got there because this Court has said reckless indifference to the facts is sufficient to get to an allegation and to a certainly a conclusion beyond the reasonable doubt of falsity. It's, I think, a fundamental misunderstanding to say that tax cases are different, that willfulness is different, and then omit the requirement that the government prove specific or allege specifically a violation of a known legal duty. It would have been a very simple thing for them to do. Kennedy. Did Judge Broomfield instruct the jury on willfulness and falsity? Right. But that's a different issue, Judge. Well, did you object to those instructions? Oh, no. He instructed correctly. They were proper. To the Petit jury. Yes. Yes. But the Fifth Amendment guarantees, and this Court said so in Keith, that the grand jury has to pass on those issues before any Petit jury gets to pass on those issues. And there's no evidence at all. There's no allegation in the indictment. You can look through it from backwards to forward that this defendant or this grand jury was told that this defendant knew that the scheme he had adopted was illegal. It's just that simple. And that's why we've alleged that issue. We think it's a lot stronger than apparently this Court's indicated, but that's why I felt compelled to come up here and speak with you. Okay. We certainly understand the argument. Okay. Thank you. All right. Thank you. The matter just argued will be submitted, and the Court will take a brief recess  All right. The Court is going to recess for five minutes. Okay. Thank you. Thank you. Okay. Okay.
judges: Rymer, Hawkins, Brewster